The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. This next case is 423-0298. The State of Illinois v. Jabaris T. Leach. For the appellant is Mr. Austin Matthew Wright. You are he, sir? Yes, sir. Okay. And for the appellee is Lucas McNeil. You are he, sir? Yes. Okay. And then, Mr. Wright, you may begin your argument on behalf of the appellant. Thank you. Good afternoon, your honors. Good afternoon, counsel. Discretionary versus mandatory. This dichotomy is the culmination of a decades-long evolution in the sentencing of juvenile and young adult offenders. Over the life of our great nation and this state, societal values have evolved to reflect the expectation that life sentences and their functional equivalent will be the product of sound judicial discretion rather than rote application of statutory mandates. In light of that evolution, Jabaris Leach sought leave to file a successive post-conviction petition raising a claim that, as applied to his specific circumstances, the statutorily mandated imposition of at least a 45-year sentence violated the proportionate penalties clause of our state constitution because he was functionally a juvenile at the time due to his neurological development. The circuit court denied leave to file below, but the record of that ruling shows no engagement with either the nature of the claim or the evolving case law upon which it was based. And in light of that, this court should reverse and remand this case to be docketed at the second stage. Counsel, in order for you to prevail in your argument to this court, would we have to reverse the decision of this court in Debo versus Haynes? I think this court wouldn't necessarily have to do that. If you take the rationale from Haynes and say the as-applied claim, the specific one at issue here has always existed, then it was unreasonable of post-conviction counsel not to supplement the petition with a claim raising an effective assistance of trial counsel for not raising a claim that the mandatory imposition of at least 45 years. So the short answer is no, I don't think you would have to, Your Honor. You spent a lot of time in your brief asserting that Haynes was wrongly decided and should be abandoned, did you not? Yes, it's certainly my position that Haynes was wrongly decided. I agree with the defendant's argument in that respect. With regard to that, isn't your argument that we should abandon Haynes and conclude it was wrongly decided undercut by the fact that the Illinois Supreme Court fairly recently twice cited Haynes with approval? So, no, it's not. I believe you're probably referring to Dorsey, but in each of the- In each of those recent decisions from the Supreme Court, be it Wilson, Clark, Moore, or Dorsey, in each of those cases the defendant sort of tried to put a square peg through a round hole. Each of those defendants received discretionary sentences. So, for example, the defendant in Clark, he received I think a total of 105 years because the first-degree murder conviction in that case was extended out to 90 years based on the age of the victim. She was 89, so she was above 60 years old. So, in each of those cases, the Supreme Court said Miller and the Supreme Court's- our Supreme Court's cases applying that under the Proportionate Penalties Clause did not establish cause because the core of Miller, what it held is that mandatory life without parole sentences are constitutionally disproportionate. So, where in those other cases the defendants received life sentences that were the product of judicial discretion, there was no violation. Well, counsel, I'm sure as an experienced appellate advocate, you're aware that the Illinois Supreme Court cites as good authority the decisions of the appellate court, like people making compliments throw around manhole covers, and the fact that nonetheless they did it twice with regard to Haynes, doesn't that suggest that maybe this court was on the right track in what we wrote in Haynes? Well, in that respect then, it's telling that the court cited simply for the notion that youth has always been relevant to the exercise of discretion. They didn't cite Haynes in any way that I'm aware of that indicated that the mandatory de facto life sentence issue has always existed. Go ahead. So, turning back then to the evolving case law and how it established cause, the legal cause is established where we identify an objective factor that impeded an ability to raise a specific claim and cause, therefore, when the reasonable basis of a claim is not available, cause is established. Under this standard, like we've sort of discussed, the specific claim was not available to Javaris at the time of sentencing or at the time the initial petition was filed. The appellate court in three cases, Griffin, McCoy, and Winters, in each of those cases, they held that the adult under the proportionate penalties clause because they were legally adults. So, the legal rule at the time is fairly clear. Those defendants falling above the threshold for legal adulthood cannot challenge a life sentence based on its mandatoriness. And so, the court in Haynes, this court rejected the defendant's reliance on those cases and said that this claim has always been buildable, in large part relying on a reformatory case from 1894. That case, again, the adult defendants were, I think, 18 and 20, and the nature of the statute was similar to the Juvenile Court Act in that defendants above 16 and under 21 were sentenced for a term to the state reformatory to not exceed the longest sentence available for that crime. So, there it was burglary and larceny. It didn't really, in any way, touch on the Miller issues. And so, Haynes' distinction in saying that the mandatoriness of this claim was buildable, it really doesn't make sense when we compare this claim to the Eighth Amendment developments on which it's premised. So, of course, in 2012, like we discussed, Miller's held that a mandatory life without parole sentence for a juvenile offender is constitutionally disproportionate without consideration of youth and its attendant circumstances. But for even decades before that, the U.S. Supreme Court had recognized that youth is more than a chronological fact and it had recognized that certain bits of emotional harm and susceptibility to outside influences was relevant to a sentencing determination. So, if the Supreme Court had recognized that relevance more than 40 years pre-Miller, if the Eighth Amendment had existed for 220 years pre-Miller and the court still substantively changed the law in Miller, it would make little sense to say that the Illinois Supreme Court didn't do the same thing when it allowed young adult offenders to raise a Miller-type challenge under the proportionate penalties clause. Mr. Wright, let me ask you a question. What in this record shows that the trial court did not consider your client's background, emotional maturity? I mean, didn't he have a really full picture of what kind of life this young man had? At this, it had a partial picture, Your Honor. At the hearing, it considered, at the very least, sure, it said that Javaris was a young man. It said it considered his degree of culpability in the crime and some past run-ins with the law. However, the Supreme Court and more to have for a pre-Miller hearing to have complied with Miller's requirements. The court didn't hear any evidence or consider anything related to Javaris's degree for rehabilitation, his particular susceptibility, his particular immaturity or impetuosity, or how his home environment impacted him growing up. And that's the core Miller holding, and these are the motion for leave to file. He said that his father was on drugs and constantly fought with his mom. He and his mother were in and out of shelters. He even alleged that he saw a brother shoot his father. Javaris had sustained significant head trauma. He even had a brain tumor removed and that left him with continual tremors. And there's a few additional facts. Each of these things sort of were not brought up at the sentencing. If I may though, the PSI reports that were included and considered the sentencing, the two separate PSI reports that the court had. Right. I mean, that information was contained within there. The reference to the fact that his brother was convicted of a firearms offense. I mean, that information was available and the not? Yes, the court did say that it considered the PSI, but where those PSIs didn't include any of the information that I just discussed, which is the specifics of how Javaris's neurological development was likely stunted, the court wasn't able to fully weigh all of the relevant facts and circumstances related to his youth when it imposed that 60-year sentence. And realistically, the term of the sentence left the court with very little discretion to begin with. It was dealing with a term of 45 years to life. Counsel, as far as the sentencing hearing, what if any impact, as we consider the arguments you're setting forth, does it have that the defendant elected not to present any evidence in mitigation at his sentencing? I don't think it has any impact on this case, given the newness of the substantive change in the law that occurred after his sentencing hearing. Thank you. Thank you. And so, and that really is the critical issue here, is that there was a substantive change in the law when the Illinois Supreme Court applied, allowed young adult offenders to apply Miller under the proportionate penalties clause. And substantive changes in the law established cause, as the Supreme Court said in Davis, because it was not reasonably available earlier, and substantive changes in the law do not seriously implicate notions of finality that might otherwise require deference to a procedural bar. But even if this court disagrees with my assessment that there was a substantive change in the law, or perhaps this court determines there was a substantive change in the law, but says that this claim could have been raised while the initial petition was pending, then it was still unreasonable of counsel to not supplement the petition, the initial petition, that is. And so, I recognize that by the time post-conviction counsel, Attorney Carter, had filed the supplements in 2016 and filed a Rule 651C certificate that some sort of presumption of reasonableness probably attached at that point. But that record, that presumption is rebutted by at least two specific points, and that would be one in 2016, and then again in 2019. So, by 2016, Javaris had filed four imposition of the firearm enhancement. Counsel told the court on the record that he had discussed multiple issues with Javaris, and he planned to perhaps file a supplement raising some but not all of the issues, because he wanted to keep the case moving along, which is understandable for how long it was pending. And then, so counsel raised just apprendee issues in 2016. But those claims were meritless. The jury instructions required for them to have returned a conviction on first-degree murder. The jury would have had to have found that, all of the facts necessary to find a firearm enhancement. But the critical thing about that is in that reviewing everything related to the firearm enhancement, counsel necessarily would have had to have seen the, seen all of the information relevant to the firearm enhancement, and he should have recognized, based on the law at that time, that the most viable way to challenge the enhancement would be to raise an as-applied challenge. So, and that's where this case is similar to this court's decision in Jennings, is that while there may not have been a clear explicit directive here in a petition from Javaris to file, to file an as-applied claim at that point, counsel reasonably should have raised a claim at that time. But if this court's not prepared to apply the Jennings rationale, then it was certainly unreasonable of counsel in 2019 to read the supplement, the proposed supplement that Javaris filed, and then to either have determined it was meritless or have to not even read it at all. Had counsel taken that claim, done even a cursory bit of research, it would have been clear that it presented a viable issue. And we know from now Javaris' filings in this case that it would have been fairly easy for to bring Javaris within the Miller holding at that time. So, causes established in this case in two different ways, and that is the evolving case law was not reasonably available sooner, and counsel was unreasonable in either not supplementing a claim based on the existing state of the law or not supplementing a claim based on the new as-applied proportionate penalties clause claim. And so, we've already briefly touched on prejudice, so I won't belabor that point. I just want to again make, distinguish this case from the multitude of other cases that are out there where the defendants only, their motions for leave to file only allege their age being 18 to 21, that they received a mandatory de facto life sentence, and that basically Miller existed. Here, Javaris not only did all of those things, but he included the specific facts necessary to bring him under, necessary to allow him to apply Miller under the proportionate penalties clause. That's what, similar to what this court told him to do in People v. Moore, which was the appellate court's case underlying People v. Moore. It's what the 1st District has told him in cases like Evans. And so, on this record, and with the development of law that we're faced with in this case, the trial court's ruling denying leave to file was incorrect, and we would ask that this court reverse that decision. If this court has no further questions for me, you can hear from me on rebuttal. Okay, Michael Canfield, that's what we'll do. Mr. McNeil, you may argue on behalf of the state. May it please the court, counsel? First, in November of 2023, the Illinois Supreme Court released Hilliard, which is related to the firearm enhancement. There, like here, there was a defendant who received a 25-year firearm enhancement and argued that it was a violation of the proportionate penalties argument. The court rejected that argument stating, quote, the legislature determined that courts should have the discretion to determine whether to impose a firearm enhancement on individuals who were juveniles when they committed their crimes, but the provision is not retroactive. More pertinent here, the legislature made a deliberate choice not to extend this discretion to sentences for individuals who were adults at the time of their offenses. So, it's clear that the Illinois Supreme Court, and there, like here, the defendant got the same 25-year mandatory firearm enhancement, and that is People v. Hilliard, which was November 2023. Even more on point is Clark and Moore, both of which cite People v. Haynes in this court, and both hold that clearly cause is not established. In fact, proportionate penalties for successive post-conviction petitions, where it's a proportionate penalties argument, the cause prong cannot be based on this proportionate penalties argument. I think the analysis could really end there, but this unreasonable assistance argument, it's hard to fathom how counsel could be unreasonable by failing to pursue an argument that's directly and recently rejected by both this court and the Illinois Supreme Court, especially when that counsel filed a Rule 651C certificate, which created a rebuttable presumption of reasonable assistance in this case. And this is probably, I do Safety Act cases now, and this is probably my last oral argument, and I'm going to make this argument one more time about unreasonable assistance of counsel. It's absurd that prejudice does not have to be shown for unreasonable assistance arguments, but does have to be shown for Strickland ineffective assistance arguments. I think that the cardinal rule of statutory interpretation is that there should not be absurdities in statutes, and that is one that seems to be interpreted that way in the unreasonable assistance of counsel argument. There's supposed to be a lower threshold than that of Strickland, and prejudice does not seem to be required by recent Illinois Supreme Court authority, and I would submit that that needs to be rectified. Although here, it's clear that counsel's performance in and of itself was objectively reasonable. Presumably, counsel noticed that proportionate penalties could have been raised all the way back at defendant's direct appeal. In fact, sentencing counsel raised a proportionate penalties argument at defendant's sentencing. And of course, maybe direct appeal counsel looked at this, and we have to remember, defendant was not a juvenile. Defendant's 20 years old, so even assuming Miller was around when defendants arguing his positions, that was, of course, Miller, Roper, and Granwell dealt with juveniles. And House, the one case that kind of opened the floodgates to all of this was an 18-year-old who was an accomplice, a lookout, who was, it was very extreme circumstances, and of course, Illinois Supreme Court reversed that as well. This is a 20-year-old who was solely responsible for shooting an unarmed person in the back while they're running away. And as discussed in the state's brief, and as Justices Connect and Lannert pointed out, the trial court basically had all the information that defendant's trying to point out in his post-conviction petition at the sentencing already, in the PSI reports. Defendant's troubled childhood was described in the PSI reports, his brain injury. In fact, the trial court specifically considered in mitigating evidence, his troubled childhood and his youth, and specifically mentioned his brain injury, and specifically considered both the PSI reports. So, defendant's post-conviction arguments don't really add anything, and specifically don't really add how this supposedly new brain evidence applies to defendant in this specific case. So, this survives, and counsel mentioned Holman, Holman mentions that no magic words have to be the point of we look at the merits that this sentencing past constitutional scrutiny in this case. And if there are no questions by this court, I would say that Clark and Moore dispose of the argument, as well as this court's Haynes opinion, and I would stand on the briefs. Okay. Thank you, Mr. McNeil. Mr. Wright, any rebuttal, sir? A few things. I won't quibble with counsel's critique of Addison. I think that case makes sense, but I'll leave it at that. I'd also like to say that People v. Hilliard does not apply to this case. The defendant there received less than a de facto life sentence. I think it was 40 years. I also think it's important, again, to point out that I understand that the state might not necessarily believe what Javaris says or believe that it in any way impacted him, but the fact of the matter is we take these allegations at true at the pleading stage, so that's irrelevant. And I would also like, there's a heavy focus on just the circumstances of this crime, but the core holding of Miller and all of the cases applying it gets to, well, what did impact of the defendant's psychological makeup have on why they committed the crime? What impact does that have on their culpability? These are the issues that are critical when we're determining whether a sentence was or was not constitutionally proportionate. And here, the court did not have the necessary information at the time, and it did, the statutory scheme did not give this court the discretion necessary where it required a 45-year sentence. Counsel, Mr. McNeil, the Hilliard case, and I want to ask you about that case. Would you agree that it constituted an abrogation of the first district decision in People v. Minifield? Can you say that again, please? Would you agree that the decision of the Supreme Court, the Hilliard constituted an abrogation of the first district decision in People v. Minifield? You know, I have to say I don't know the answer to that question. Okay. Do you have anything further, sir? I don't. Thank you. We ask that you reverse the Supreme Court's ruling. Okay. Thank you. Thank you, Mr. McNeil, for your oral arguments. The court will take this matter under advisement and stand in recess.